## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LACKAWANNA CHIROPRACTIC P.C.**, a New York professional corporation, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**SQUIP, INC.,** a New Jersey corporation,<br><br>*Defendant.* | Case No. :<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Lackawanna Chiropractic P.C. ("Lackawanna" or "Plaintiff")
brings this Class Action Complaint against Defendant Squip, Inc. ("Squip") or
"Defendant"), to stop its practice of sending unsolicited fax advertisements to
consumers and businesses, and to obtain redress for all persons or entities similarly
injured by its conduct. Plaintiff Lackawanna, for its Class Action Complaint,
alleges as follows upon personal knowledge as to itself and its own acts and
experiences, and, as to all other matters, upon information and belief, including
investigation conducted by its attorneys.

///

1

## PARTIES

1.      Plaintiff Lackawanna Chiropractic P.C. is a professional corporation organized and existing under the law of the State of New York located at 1198 Ridge Rd., Buffalo, New York.

2.      Defendant Squip, Inc. is a company incorporated and existing under the laws of the State of New Jersey, with its principal place of business located in Lebanon, New Jersey.  Defendant's address is P.O. Box 556, Lebanon, New Jersey 08833.  Squip does business in the State of New Jersey and in this District.

## JURISDICTION & VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises, in part, under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), which is a federal statute.

4.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant regularly conducts business in the State of New Jersey and in this District and its principal place of business is located within this District.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper

2

because Defendant resides in this District.

## COMMON ALLEGATIONS OF FACT

6.      This case challenges Defendant's practice of sending unsolicited fax advertisements.

7.      Defendant is company that makes natural medical products which help those who suffer from allergies, asthma, bronchitis and other respiratory disorders.  Defendant purportedly sells its natural medical products in 27 countries world-wide to domestic and international distributors and wholesalers, including the United States.[1] [2]

8.      In its ordinary course of business, Defendant utilizes a facsimile machine and sends solicitation faxes *en masse* in its overly aggressive attempts to market itself, its services, and its products.

9.      To market Defendant's services and products to potential clients, including doctors' offices, Defendant sends out unsolicited faxes that advertise the existence of Defendant, its services, and its products.  *See* "Squip Junk Fax," a true and correct copy of which is attached hereto as Exhibit A.

10.     The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations promulgated under the Act, prohibits a person or entity from faxing or

---

[1] http://www.linkedin.com/company/2625925.
[2] In 2004, Defendant formed a joint venture with ENTpro AB.  Based out of Sweden, ENTpro AB develops, produces and markets medical devices in Sweden and internationally.  *See* http://www.bloomberg.com/Research/stocks/private/snapshot.asp?privcapId=113358861.

having an agent fax advertisements without the recipient's prior express consent, invitation, and permission. The JFPA provides a private right of action and provides statutory damages of $500 per violation.

11.     Furthermore, The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

12.     The Squip Junk Fax is a "dual purpose" fax.  The Federal Communications Commission ("FCC") defines these types of communications as "offers for free goods and services that are part of an overall marketing campaign to sell property, goods, or services." Report and Order, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). In other words, the FCC has concluded that a "dual purpose" fax is an advertisement under the TCPA.[3]

13.     Defendant advertises that its Nasaline saline rinsing system is "FREE," yet solicits the Squip Junk Fax recipients to visit Defendant's website. Once at Defendant's website, it advertises its products and gives instructions on

---

[3] In *Bennett v. Boyd Biloxi, LLC*, the plaintiff received prerecorded calls from defendant offering the plaintiff free concert tickets.  The prerecorded message also encouraged the plaintiff to visit defendant's website, "to view all of your offers."  The court ultimately determined, "[t]he defendant's calls patently encouraged the plaintiff to visit [defendant's] site and see what goods and services the defendant had for sale." No. 14-0330-WS-M, 2015 U.S. Dist. LEXIS 59632, at ¶ 11 (S.D. Ala. May 6, 2015). The Court continued, "any customer service or informational aspect to the defendant's notification that the plaintiff was entitled to free show tickets does not insulate the defendant from liability for any advertisement or telemarketing contained elsewhere in the same message." *Id.* at ¶ 13.

how to order its products, thereby soliciting its recipients to make a purchase.[4] *See* Exhibit A.

14.     Put broadly, Defendant offers free samples to those in the medical profession in hopes its recipients will purchase products from Defendant in bulk so its recipients can then sell Squip's products to their patients.

15.     While Defendant advertises its free Nasaline saline rinsing system within the Squip Junk Fax, it's ulterior motive is clear: to advertise and solicit its recipients to go to Defendant's website to purchase its products.  Squip invites a viewer of its website how to order wholesaler and distributor purchasing.[5] In Squip's privacy policy on its website it mentions that "The information collected about you is used to process orders and to ensure that you are provided with the best service."[6]

16.     The Squip Junk Fax advertises the commercial availability of any property, goods, or services when it advertises its Nasaline saline rinsing system and solicits contact from its recipient.

17.     Defendant sent a facsimile transmission of an unsolicited advertisement to Plaintiff and the Classes in violation of the JFPA.  The Squip Junk Fax promotes the services and the products of Defendant, namely its Nasaline

---

[4] The following link is connected to Defendant's ordering page: http://www.squipusa.com/index.php
[5] http://www.squipusa.com/wholesalers.php
[6] http://www.squipusa.com/privacypolicy.php

saline rinsing system.[7]  Plaintiff is informed and believes, and upon such

information and belief avers, that Defendant has sent, and continues to send,

unsolicited advertisements via facsimile transmission in violation of the JFPA to at

least 40 other persons as well (and likely to hundreds, or even thousands, of

persons).

18.    Unsolicited faxes cause harm to their recipients. A junk fax recipient

loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the

recipient's time that would have been spent on something else. A junk fax also

interferes with, invades, and intrudes upon the recipient's privacy. Unsolicited

faxes prevent fax machines from receiving authorized faxes, prevent their use for

authorized outgoing faxes, cause undue wear and tear on the recipients' fax

machines, and require additional time and labor to attempt to discern the source

and purpose of the unsolicited message. Such faxes are annoying and are a hassle

to deal with.

19.    On behalf of itself and all others similarly situated, Plaintiff brings

this case as a class action asserting claims against Defendant under the JFPA.

20.    Defendant's facsimile transmissions were and are being done in the

same or similar manner. That is, Defendant used the same equipment to send

facsimiles to Plaintiff as it used to send facsimiles to everyone else. As such, this

---

[7] Squip brands are: Nasaline, Nasakleen Squeezie, Squip Neti Pot, Baby NasaKleen, Kyrosol, Andas, Salitair, Himalayan Salt Air Inhaler and Snooze brands.

action is based on the same legal theory, namely liability under the JFPA. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by 47 USC § 227(b)(3).

**FACTS SPECIFIC TO PLAINTIFF LACKAWANNA CHIROPRACTIC P.C**

21.    On or about July 13, 2016 at 11:46 p.m., Squip transmitted by telephone facsimile machine an unsolicited fax to Plaintiff Lackawanna.  *See* Exhibit A.

22.    The Squip Junk Fax advertises the availability of Squip's Nasaline saline rinsing system. *See* Exhibit A.

23.    The Squip Junk Fax from Defendant also solicited Plaintiff to visit its website at www.squipusa.com. *See* Exhibit A.

24.    The Squip Junk Fax from Defendant further solicited Plaintiff to enter his identification and address information in order to have a free saline nasal rinsing system sent to him. *See* Exhibit A.

25.    Squip profited by and received the benefits of marketing of its goods and services and is a responsible party under the JFPA.

26.     Squip created or made the Squip Junk Fax, which it knew or should have known advertises its products (namely, its Nasaline nasal rinsing system) that Squip intended to and did in fact distribute to Plaintiff and the other members of the Class.

27.     The Squip Junk Fax is part of Squip's work or operations to market its goods or services that are performed by Squip and/or on behalf of Squip. Therefore, the Squip Junk Fax constitutes material furnished in connection with Squip's work or operations.

28.     Plaintiff had not invited or given permission to Squip to send the Squip Junk Fax and had no prior relationship with Squip.

29.     Squip faxed the same unsolicited facsimile message to Plaintiff and more than 40 other recipients without first receiving the recipients' express permission or invitation.

30.     There is no reasonable means for Plaintiff (or any other Class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners actually desire to receive.

31.     Furthermore, in an effort to ensure it could keep hounding Plaintiff with faxes in the future, the Squip Junk Fax failed to display a proper opt-out notice as required by 47 C.F.R. 64.1200 because it did not apprise recipients of their legal right to opt out.

## CLASS ACTION ALLEGATIONS

32.     In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiff

brings this class action pursuant to the JFPA, on behalf of the following Class of

persons:

> **Squip Junk Fax Class**: All persons who (1) on or after four years
> prior to the filing of the initial complaint in this action, (2) were sent,
> by Defendant or on Defendant's behalf a telephone facsimile message
> substantially similar to Exhibit A, (3) from whom Defendant claims it
> obtained prior express permission or invitation to send those faxes in
> the same manner as Defendant claims it obtained prior express
> consent to fax the Plaintiff.

33.     The following individuals are excluded from the Class: (1) any Judge

or Magistrate presiding over this action and members of their families; (2)

Defendant, its subsidiaries, parents, successors, predecessors, and any entity in

which Defendant or its parents have a controlling interest and their current or

former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who

properly execute and file a timely request for exclusion from the Class; (5) the

legal representatives, successors or assigns of any such excluded persons; and (6)

persons whose claims against Defendant have been fully and finally adjudicated

and/or released. Plaintiff anticipates the need to amend the class definitions

following appropriate discovery.

34.     Class Sizes (F. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes,

and upon such information and belief aver, that the number of persons and entities

of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of Class members is in the hundreds and potentially in the thousands.

35.     Commonality (F. R. Civ. P. 23 (a) (2)): Common questions of law and fact apply to the claims of all Class members that are central to each Class members' claim. Common material questions of fact and law include, but are not limited to:

(a)     Whether the Defendant sent an unsolicited fax advertisement;

(b)     Whether the Defendant's fax advertised the commercial availability of property, goods, or services;

(c)     Whether Defendant obtained prior express consent from the recipients to send the faxes;

(d)     Whether the Defendant faxed advertisements without first obtaining the recipient's prior permission or invitation;

(e)     Whether the Defendant sent the faxed advertisements knowingly;

(f)     Whether the Defendant violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

(g)     Whether the Squip Junk Fax contained an "opt-out notice" that complies with the requirements of 47 USC § 227(b)(1)(C)(iii), and the regulations

promulgated thereunder, and the effect of the failure to comply with such requirements;

(h)    Whether the Defendant should be enjoined from faxing advertisements in the future;

(i)    Whether the Plaintiff and the other members of the Classes are entitled to statutory damages; and

(j)    Whether the Court should award treble damages.

36.    Typicality (F. R. Civ. P. 23 (a) (3)): Plaintiff's claims are typical of the claims of all Class members. Plaintiff received an unsolicited facsimile sent by or on behalf of the Defendant advertising goods and services of the Defendant during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. The Defendant has acted the same or in a similar manner with respect to the Plaintiff and all the Class members.

37.    Fair and Adequate Representation (F. R. Civ. P. 23 (a) (4)): The Plaintiff will fairly and adequately represent and protect the interests of the Class. It is interested in this matter, has no conflicts and has retained experienced class counsel to represent the Class. Plaintiff is committed to keeping itself apprised of the litigation and to representing the Class Members' interests.

38.    Common Conduct (F. R. Civ. P. 23 (b) (2)): Class certification is

appropriate because the Defendant has acted and refused to act in the same or similar manner with respect to all Class members thereby making injunctive and declaratory relief appropriate. Plaintiff demands such relief as authorized by 47 U.S.C. §227.

39.    Predominance, Superiority, and Manageability (F. R. Civ. P. 23 (b) (3)): Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)    Proof of the claims of the Plaintiff will also prove the claims of the Class without the need for separate or individualized proceedings;

(b)    Evidence regarding defenses or any exceptions to liability that the Defendant may assert and prove will come from the Defendant's records and will not require individualized or separate inquiries or proceedings;

(c)    The Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class members;

(d)    The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one (1) proceeding based upon common proofs. The

common questions cut to the heart of the case and predominate over any supposed individualized issues; and

(e)     This case is manageable and superior to maintain as a class action in that:

i.     The Defendant identified persons or entities to receive the fax transmission and it is believed that the Defendant's computer and business records will enable the Plaintiff to readily identify class members and establish liability and damages;

ii.     Liability and damages can be established for Plaintiff and the Class with the same common proofs;

iii.     Statutory damages are provided for in the statute and are the same for all Class members and can be calculated in the same or a similar manner;

iv.     A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

v.     A class action will contribute to uniformity of decisions concerning the Defendant's practices; and

vi.     As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## FIRST CAUSE OF ACTION
## Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227, *et seq*.
### (On Behalf of Plaintiff and the Squip Junk Fax Class)

40.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

41.     The JFPA makes unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement …" 47 U.S.C. § 227(b)(1)(C).

42.     The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

43.     The faxes sent by Defendant advertised its services, namely its retail-management and consulting services, which were commercial in nature, and were advertisements under the TCPA.  *See* Exhibit A.

44.     Plaintiff and the other members of the Squip Junk Fax Class never gave prior express consent, invitation or permission to receive the faxes.

45.     **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in §(b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following, among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

a.      a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

b.      a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

c.      a statement advising the recipient that he or she may opt-out with respect to all of his or its facsimile telephone numbers, and not just with respect to the number or numbers at which fax advertisements have been received from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or its fax machines;

46.     The requirement of (1) above is incorporated from 47 U.S.C. § 227(b)(D)(ii). The requirement of (2) above is incorporated from 47 U.S.C. § 227(b)(D)(ii) and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 FCC Rcd. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are

15

contained in 47 U.S.C. § 227(b)(2)(E) and incorporated into the Opt-Out Notice Requirements via 47 U.S.C. § 227 (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of fax machines giving them the right, and means, to stop unwanted faxed advertisements. As a result of such requirements, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the faxes advertisement gave "prior express permission or invitation" to receive the faxes nor can the sender claim the exemption from liability contained in 47 U.S.C. § 227(b)(C)(1).

47.    **The Faxes.** Defendant sent Exhibit A via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of Plaintiff and the other members of the Squip Junk Fax Class. The Squip Junk Faxes constituted an advertisement under the Act. The Squip Junk Faxes were transmitted to persons or entities without their prior express permission or invitation and/or Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements. Defendant violated the JFPA and the regulations promulgated thereunder by sending the Squip Junk Faxes via facsimile transmission to Plaintiff

16

and members of the Squip Junk Fax Class.

48.  **Defendant's Other Violations of the TCPA.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Squip Junk Fax Class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). Defendant violated the JFPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant is continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

49.  The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiff and the Squip Junk Fax Class to redress Defendant's violations of the JFPA, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The JFPA also provides that injunctive relief is appropriate. *Id.*

50.     The JFPA is a strict liability statute. The Defendant is liable to the Plaintiff and the other members of the Squip Junk Fax Class even if it did not intend to send the faxes or to send them without first obtaining prior express invitation or permission.

51.     The Defendant knew or should have known that (a) Plaintiff and the other members of the Squip Junk Fax Class had not given express invitation or permission for the Defendant or anybody else to fax advertisements about the Defendant's goods or services; (b) the Squip Junk Faxes constituted an advertisement; and (c) the Squip Junk Faxes did not apprise recipients of their legal right to opt out.

52.     The Defendant's actions caused damages to Plaintiff and the other members of the Squip Junk Fax Class. Receiving the Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendant's faxes. Moreover, the Defendant's faxes used the Plaintiff's fax machine. The Defendant's faxes cost the Plaintiff time, as the Plaintiff and its employees wasted their time receiving, reviewing and routing the Defendant's unauthorized faxes. That time otherwise would have been spent on the Plaintiff's business activities. The Defendant's faxes unlawfully invaded the Plaintiff's and other Squip Junk Fax Class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other members of the

Squip Junk Fax Class from the sending of Defendant's advertisements occurred outside of Defendant's premises.

53.     As a result of Defendant's conduct, Plaintiff and the other members of the Squip Junk Fax Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

54.     Furthermore, in the event the Court finds that Defendant's conduct was willful and knowing, the Court should, under 47 U.S.C. §227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Squip Junk Fax Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lackawanna, on behalf of itself and the Class, prays for the following relief:

1.     An order certifying this case as a class action on behalf of the Class as defined above; appointing Lackawanna Chiropractic P.C. as the representative of the Class and appointing its attorneys as Class Counsel;

2.     An award of actual and statutory monetary loss from such violations or the sum of five hundred dollars ($500.00) for each TCPA violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3.      An order declaring that Defendant's faxes constitute unsolicited advertisements, that they lack the required opt out language, and that Defendant sent the faxes without first obtaining prior express invitation, permission or consent of the recipients, and enjoining Defendant from further violations, and otherwise protecting the interests of the Class;

4.      An award of pre-judgment interest;

5.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

6.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

///

///

///

///

///

///

///

///

Respectfully Submitted,


**LACKAWANNA CHIROPRACTIC P.C.**,
individually and on behalf of all others similarly
situated,


Dated: February 28, 2017            By:/s/Stefan Coleman_____


Stefan Coleman
law@stefancoleman.com
Law Offices of Stefan Coleman, PLLC
1072 Madison Ave., Ste. #1
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Blake J. Dugger*
blake@stefancoleman.com
Law Offices of Stefan Coleman, PLLC
1011 W. Colter St., #236
Phoenix, Arizona 85013
Telephone: (602) 441-3704
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

*\*Pro hac vice to be sought*

21

**EXHIBIT A**

iQuiP

**Do you recommend nasal rinsing bottles or neti pots**
**as part of patient chiropractic care?**
**If so, let your patients experience the ease, comfort**
**and effectiveness of NASALINE!**

# FREE
## Sample!

**www.squipusa.com**

The Nasaline saline nasal rinsing system has provided thousands of allergy sufferers and people with nasal ailments and breathing problems with much needed **drug-free** relief. One of Nasaline's unique features is its patented silicon tip that provides the most comfortable and effective way to self-irrigate the nasal cavities. In addition, Nasaline is remarkably notable for its simplicity and ease of use and the fact that the user controls the flow for a more effective wash.

**- Colds   - The Flu   - Allergies**
**- Sinus Related Infections**

Yes Yes YES! - please send a free sample to:

Chiropractor Name _____
Name of Practice _____
Address _____
City, State & Zip _____
Phone Number _____ Email_____

Fax back to 908.534.1107 - Free sample available to professionals only!

(For REMOVAL fax back to 908.534.1107)